IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNIE RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV658 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donnie Richardson ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 15, 2006, alleging disability as of January 30, 2006, due to a back injury. (Tr. at 105-09.)[2] His application was denied initially (Tr. at 38-41) and upon reconsideration (Tr. at 44-46).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 53-54.) Plaintiff, along with his non-attorney representative, attended the subsequent video hearing on January 13, 2009. (Tr. at 9.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 15) and, on July 30, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since January 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he should avoid hazardous environments; he can only occasionally climb . . . ladders, ropes or scaffolds, or stoop, kneel or crouch; and he can only frequently climb stairs, balance or crawl.

(Tr. at 11-12.)

Based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), the ALJ determined that the Social Security Administration's medical-vocational

2

guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, directed a finding of "not disabled." (Tr. at 15.) He therefore concluded that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Tr. at 15.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

3

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

4

disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from one severe impairment: degenerative disc disease of the lumbar spine. The ALJ found at step three that this impairment did not meet or equal a disability listing. (Tr. at 11.) Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff only could perform light work with additional postural limitations and restrictions from work hazards. (Tr. at 12.) Based on this determination, the ALJ determined under step four of the analysis that Plaintiff could not return to his past relevant work. (Tr. at 14.) The ALJ further found that Plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled light work. Accordingly, based on Plaintiff's residual functional capacity and his age, education, work experience, and on

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

the application of Medical-Vocational Rule 202.17, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform, and thus Plaintiff is "not disabled." (Tr. at 15.)

This action for judicial review has been brought by the Plaintiff *pro se*. This Court is required to construe such *pro se* pleadings liberally to allow for the development of a potentially meritorious claim. Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* pleadings are held to a lower standard than those drafted by attorneys. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978).

Plaintiff first argues that the ALJ improperly failed to accord controlling weight to the opinion of his treating physician, Dr. Ronald A. Gioffre. (Pl.'s Mots. for J. and Retro-Interim Benefits [Docs. #13, #14].) Plaintiff specifically argues that Dr. Gioffre concluded that Plaintiff was "unable to work" indefinitely due to his back injury, and that the ALJ erred in according greater weight to the opinions of examining and non-examining state agency physicians that Plaintiff is not disabled. (Id.)

Plaintiff was treated by Drs. Gioffre and Richard D. Ramos following his injury in January 2006. (See Tr. at 212-20.) According to the treatment notes, Plaintiff's treatment with Dr. Ramos consisted of two visits in February and March of 2006. (See Tr. at 216-19.) During Plaintiff's initial visit in February, Dr. Ramos noted that Plaintiff was in no obvious distress, ambulated without an antalgic gait and had good range of motion in the lumbar spine. Plaintiff could toe and heel walk without difficulty and straight leg raise was negative. According to the notes, x-rays revealed "[n]o significant spondylosis," and Dr. Ramos's assessment concluded that

7

Plaintiff was suffering "[l]ow back pain with radiation into the left lower limb, with mildly positive neural tension signs on the left." Dr. Ramos released Plaintiff to work "light duty" with no lifting over ten pounds, no bending, stooping or squatting, and no prolonged sitting or standing. (Tr. at 218-19.)

When Plaintiff returned to Dr. Ramos the following month, Dr. Ramos did not note any increased symptoms; in fact, Plaintiff reported that he was doing "a little bit better" and that his pain level was 3/10. A lumbar MRI performed on March 11, 2006, showed a disc protrusion that impinged the nerve root. Dr. Ramos referred Plaintiff to Dr. Gioffre for a surgical consultation but did not place any additional limitations on Plaintiff's ability to work. (Tr. at 216.)

It appears from the medical record that Plaintiff saw Dr. Gioffre in April, May, and July of 2006. In April 2006, Dr. Gioffre reviewed Plaintiff's MRI, noted a "painful range of motion of his back," and recommended surgery. In May 2006, Dr. Gioffre noted that Plaintiff was wearing a brace,[6] Plaintiff's back was in active spasm, and that Plaintiff could barely walk without pain. (Tr. at 213.) Dr. Gioffre noted that he recommended surgery but that Plaintiff declined. Dr. Gioffre further reported, "I told [Plaintiff] that he is going to need to go back to his job and settle that with them because I cannot keep him out of work forever for this." (Tr. at 213.) In July 2006, Dr. Gioffre asked Plaintiff to come in for a final evaluation after Plaintiff again refused surgery. (Tr. at 220.) Dr. Gioffre gave Plaintiff a 10% disability rating of his back. He refused to prescribe narcotics for Plaintiff's pain and instead advised Plaintiff to take ibuprofen.

---

[6] There is no record that Dr. Ramos or any other physician prescribed a brace for Plaintiff.

8

In addition, he authorized Plaintiff to return to work at "light" duty, with "indefinite" limitations of lifting no more than 10 pounds and no prolonged bending, stooping or climbing. (Tr. at 220.) Subsequently, in January 2007, Dr. Gioffre signed a one-page form stating that Plaintiff was "unable to work." (Tr. at 242.) Plaintiff did not provide records of any medical treatment since that time.

The Commissioner has promulgated regulations governing the weight to be given the opinions of treating physicians. The regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In this case, the ALJ found that Dr. Gioffre's opinions were compatible with sedentary work, but that the record evidence supported a finding that Plaintiff remained capable of a limited range of light work. (See Tr. at 13.) The ALJ specifically noted that Dr. Gioffre's opinions were rendered only a few months after Plaintiff's back injury, and that later evidence reflected significant improvement of Plaintiff's symptoms. The ALJ also gave limited weight to the January 2007 form signed by Dr. Gioffre because Dr. Gioffre's statement that Plaintiff was "unable to work" concerned an issue reserved to the Commissioner. (Tr. at 13-14.)

9

Based on the record, the Court finds that the ALJ's finding is supported by substantial evidence. With respect to Dr. Gioffre's January 2007 form statement, Dr. Gioffre's conclusion that Plaintiff is "unable to work" is not supported by any clinical or other objective evidence, is inconsistent with Dr. Gioffre's own earlier opinions and treatment records, and is a summary conclusion on an issue reserved to the Commissioner. See Craig, 76 F.3d at 590.

With respect to the nature of the limitations in this case, the ALJ's finding is also supported by the findings of Dr. Jamaki R. Setty, an examining consulting physician, and the opinion of Dr. David Brown, a non-examining consulting physician. As set out in Social Security Ruling 96-6p, state agency medical consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." In disability cases, they consider the medical evidence and make findings of fact on the medical issues, including the claimant's residual functional capacity. Findings of fact by these consultants become "opinions" at the hearing level of administrative review. Because these consultants are experts in Social Security disability programs, the ALJ must consider and evaluate these opinions in making a decision.

In this case, Dr. Setty examined Plaintiff on February 12, 2009. Dr. Setty did not render any opinion regarding Plaintiff's abilities or limitations, but he did make certain objective findings that are relevant here. He noted tenderness of the lower spine, but also noted no muscle spasms or atrophy. (Tr. at 245-46.) Additionally, he reported that Plaintiff's gait was unremarkable except for a slight limp and that Plaintiff was able to sit on an exam table without noticeable discomfort. (Tr. at 244-45.) For his part, Dr. Brown considered the record medical

evidence and found that Plaintiff is capable of performing medium-level work with only occasional stooping, kneeling, crouching and climbing of ladders, ropes or scaffolds, and frequent balancing, crawling and climbing of ramps or stairs. (Tr. at 221-28.) Dr. Brown further found that Plaintiff should avoid concentrated exposure to hazards such as machinery or heights. Dr. Brown considered the opinion of Dr. Gioffre and concluded that the restrictions proposed by Dr. Gioffre were not significantly different.

The ALJ properly considered each of these opinions in the present case. (See Tr. at 13-14.) Specifically, the ALJ incorporated the environmental and postural limitations in Dr. Brown's assessment, but found that based on the totality of the evidence, Plaintiff is more limited than found by Dr. Brown and can in fact perform only light-level work. (Tr. at 14.) Substantial record evidence supports the ALJ's finding, given the various medical reports and opinions set out above. Moreover, the ALJ further noted that "even if the claimant remained capable of only sedentary work activity," that is, even if Dr. Gioffre's recommendations are adopted instead and Plaintiff is limited to sedentary work, Plaintiff would still be found "not disabled" under Medical-Vocational Rule 201.24. (Tr. at 13 n.2.) Thus, the decision of the ALJ is supported on multiple grounds.[7]

---

[7] As part of his Motion for Judgment [Doc. #14], Plaintiff has submitted an office visit note from Dr. Gioffre for January 25, 2007, in which Dr. Gioffre notes "no overall change" in Plaintiff's condition, and further notes that Plaintiff still does not want surgery. The office note states that "nothing really has changed," that Plaintiff asked for stronger pain medicines but Dr. Gioffre "felt Aleve was all he needed," that "nothing has changed in the disability rating," and that "[n]othing else further has changed" compared to the July 2006 office note. This January 2007 office note is not included in the administrative transcript, and there is no showing as to why Plaintiff did not provide it to the Social Security Administration with Dr. Gioffre's January 2007 signed summary form. However, there is no need for further consideration of this evidence, given that it provides further support for the decision of the Commissioner in any event, and there is no basis to conclude that the Secretary's decision "might reasonably have been different" in light of this additional note.

Finally, the Court notes that Plaintiff also contends that he is entitled to "retro-interim benefits." (Doc. #13 at 2; Doc. #14 at 2.) Having concluded that the Commissioner properly found Plaintiff "not disabled" and therefore not entitled to the payment of benefits under the Act, there is no legal authority supporting Plaintiff's claims for retroactive or interim benefits.

IT IS THEREFORE RECOMMENDED that Plaintiff's Motions for Judgment and Retro-Interim Benefits [Docs. #13, #14] be denied, that the Commissioner's Motion for Judgment on the Pleadings [Doc. #18] be granted, and that Judgment be entered in favor of the Commissioner.

This, the 10th day of December, 2013.

                                          /s/ Joi Elizabeth Peake
                                          United States Magistrate Judge